Filed 7/30/24  P. v. Mendoza CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE MENDOZA,<br><br>    Defendant and Appellant. | G063474<br><br>(Super. Ct. No. FVI22000528,<br> consol. with FVI22000517)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Joseph B. Widman, Judge. Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette

C. Cavalier and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

A jury convicted defendant Jose Mendoza of robbery and possession of a firearm in connection with an armed robbery that took place in the town of Apple Valley and possession of a firearm and possession of ammunition by a felon in connection with an unrelated traffic stop two months later in the city of Victorville. The issue at trial with respect to the robbery was identity: two of the perpetrators wore ski masks revealing only their eyes, dark clothing, and gloves, and the third accomplice stayed inside the vehicle and was never seen by the victim. Mendoza was tried jointly with Transito Jovani Lovo, also known as Geo Lovo, the suspected driver of the vehicle. The third suspect, Rogelio Martinez, testified under a grant of immunity. At trial, the People introduced incriminating Facebook messages between an account with the username "Mendoza Jose" and codefendant Lovo. On appeal, Mendoza contends the trial court should have excluded the Facebook messages because they were not properly authenticated as originating from him. Mendoza also contends his convictions for possession of a gun and possession of ammunition run afoul of his Second Amendment right to possess firearms.

We reject both arguments. The Facebook messages were sufficiently authenticated. Moreover, any alleged error by the trial court in admitting the messages was harmless considering the other independent, substantial evidence from which a jury could have concluded Mendoza was the perpetrator who pointed the gun at the victim during the robbery. We also reject Mendoza's constitutional challenge to the firearms convictions. We agree with the court's conclusion in *People v. Alexander* (2023) 91 Cal.App.5th

469, 478 (*Alexander*), and the appellate courts that have followed *Alexander*, that convicted felons (such as Mendoza) do not have a constitutional right to possess firearms and/or ammunition. We affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On the night of December 2, 2021, two men wearing ski masks and dark clothing exited an older model Jeep Cherokee in an alleyway behind the Xhale smoke shop (Xhale) in Apple Valley, where S.D. worked for his father. One of the men had a gun in his hand and robbed S.D. at gun point in the alleyway. A third individual, the driver, stayed inside the Jeep Cherokee.

The gun had a silvery shine to it. S.D. was able to see the eyes of the man pointing the gun at him; they were distinctive, "like unproportional, kind of." One of the men asked S.D. to open the smoke shop, even though S.D. had not mentioned Xhale during the robbery or that he worked there.[1] The men attempted to disguise their voices during the robbery by speaking in a deeper tone. S.D. never saw the driver of the Jeep Cherokee. The man with the gun started "touching all around, feeling for if [S.D.] had a wallet or something." The perpetrators took S.D.'s phone, keys, air pods, blanket, and backpack. One of the men, but not the person holding the gun, broke the passenger window of the car.

---

[1] S.D. tried to exit his vehicle to open Xhale, but the perpetrators would not let him get out of his car. The men eventually left the alleyway.

One or more video cameras pointed at the alleyway captured the robbery taking place, as well as the license plate of the Jeep Cherokee.[2] The Jeep Cherokee used in the robbery was from the 1990s and was distinctive because it had multicolored panels, including blue, green, and black.

Police identified Lovo as the first suspect by tracing the Jeep Cherokee to the home of Lovo's girlfriend, K.B., whose Facebook account was used to list the Jeep Cherokee for sale on Facebook Marketplace. Police found Lovo at K.B.'s residence along with the Jeep Cherokee, which was hidden in a closed garage. Portions of the blue vinyl wrap that was on the front of the Jeep Cherokee on the night of the robbery had been removed. From there, police investigated publicly available information from Lovo's and K.B.'s Facebook accounts, then issued search warrants to Facebook, and obtained (among other things) incriminating Facebook messages between Lovo[3] and another Facebook user under the account name "Mendoza Jose" sent just before the robbery and the day after. There also were messages between K.B. and Lovo, as well as messages between Lovo and Martinez.

---

[2] The Jeep Cherokee was registered to an individual who the police ruled out as a suspect.

[3] Lovo had two public Facebook accounts, one under the name Transito Lovo, and one that had posted more recently under the name Geo Lovo. The Geo Lovo account included photographs of Lovo and K.B. together. The profile picture for one of the Lovo accounts showed a tattoo on his left hand that matched a tattoo from a photograph of a hand next to the Jeep Cherokee listed for sale on Facebook Marketplace.

Around the time of the robbery, Facebook user Mendoza Jose sent a message to Lovo stating "[w]e are ten minutes from Valero."[4] Lovo responded he was on his way. Lovo then asked Mendoza Jose where he was, to which Mendoza Jose replied he was "behind," "[b]y smoke shop." Mendoza Jose later asked, "[w]hich one?" to which Lovo responded, "Xhale." Mendoza Jose then responded, "Oh, I'm behind the Valero smoke shop." Lovo then says he's "on the other side," and then, "St. Mary's."[5]

The day after the robbery, Lovo wrote to Mendoza Jose that Lovo needed to "disappear the Jeep." Mendoza Jose told Lovo to "park it in the garage." Lovo also sent Mendoza Jose a screen shot from the sheriff's department public online call log, highlighting the incident pertaining to the robbery on December 2. Mendoza Jose responded, "[o]h, shit," and then asked Lovo what he was doing. Lovo responded he was "[expletive] trippin' out," to which Mendoza Jose responded, "yeah, me too." Mendoza Jose then wrote "[b]ut just don't use it, leave it in the garage."

Once police identified Mendoza, Lovo, and Martinez as the suspects in the robbery, they told S.D. their names. S.D. identified all of them as regular customers of Xhale. S.D. had seen Mendoza and Lovo come to Xhale together. S.D. also had seen Lovo at Xhale with a girl named "Kelly," which is K.B.'s first name. S.D. recalled Mendoza's eyes looked like the eyes

---

[4] The actual Facebook messages were not included as part of the record on appeal. The messages, however, were referred to and summarized by one or more trial witnesses. Therefore, any reference in this opinion to the content of the Facebook messages comes from our review of the trial testimony, not the messages themselves.

[5] Xhale was near a Valero gas station and St. Mary's Hospital. There was a different smoke shop behind Valero.

of the person who had pointed the gun at him. The perpetrators were on the heftier side, and Mendoza fit the size of the individual with the gun. S.D. also testified he believed the Jeep Cherokee from the Facebook advertisement was the same one from the night of the robbery.

Two months after the robbery, police found a semiautomatic handgun and ammunition in Mendoza's possession during a traffic stop. Mendoza was trying to conceal the gun. Mendoza admitted to police the gun was his, it was "handed down to him or given to him," and "he's had the handgun for about two years." S.D. identified the gun as the one used against him in the robbery.[6]

The People charged Mendoza with one count of second degree robbery (Pen. Code, § 211 [count 1]),[7] with a firearm enhancement (§ 12022.53, subd. (b)), possession of a firearm by a felon on two separate occasions, two months apart (§ 29800, subd. (a)(1) [counts 2 and 4]), one count of assault with a semiautomatic firearm (§ 245, subd. (b) [count 3]), and one count of possession of ammunition by a felon (§ 30305, subd. (a)(1) [count 5]). Mendoza and Lovo were tried together before the same jury for the robbery. The third suspect in the robbery, Martinez, was granted immunity under section 1324 and testified at the trial.

The jury found Mendoza guilty on counts 1, 2, 4, and 5, and not guilty on count 3. The jury convicted Lovo of second degree robbery. The trial court sentenced Mendoza to five years in prison for count 1, two years for

---

[6] S.D. testified he was "8.5" out of 10 certain the gun found in Mendoza's possession two months later was the same one used in the robbery.

[7] All further statutory references are to the Penal Code.

count 2, eight months for count 4, and 16 months for count 5. The terms for counts 2 and 5 were to run concurrent with the term for count 1, while count 4 was to run consecutive. Mendoza timely appealed.

DISCUSSION

I.

AUTHENTICITY OF FACEBOOK MESSAGES

Prior to the commencement of trial, the People moved in limine to admit the records they obtained from Facebook in response to one or more search warrants, which included the incriminating Facebook messages the People contended linked Lovo, Mendoza, and Martinez to the robbery. As to authenticity, the trial court ruled the People would need to establish foundation during the trial that the accounts were tied to the actual defendants in order to publish them to the jury.[8] Mendoza's attorney objected to the admission of the messages based on lack of foundation that the Mendoza Jose account was owned or maintained by Mendoza and that the messages were actually sent by him. Mendoza's attorney pointed out that his name is a common one. The court ultimately overruled the objection and determined there was sufficient foundation to show Mendoza controlled the "Mendoza Jose" account and sent the messages. Mendoza contends this was error. We disagree.

The standard of review on appeal is abuse of discretion. (*People v. Dawkins* (2014) 230 Cal.App.4th 991, 1001.) A court's ruling as to the

---

[8] The trial court ruled the records fell within the business records exception to the hearsay rule and were statements made in furtherance of an alleged conspiracy; it ruled they were not testimonial. Mendoza only challenges the court's ruling as to the authenticity of the Facebook messages purportedly sent to and from Mendoza, not these rulings regarding the hearsay rule.

authenticity of a writing is "made as a 'preliminary fact [citation] and is statutorily defined as the "introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is" or "the establishment of such facts by any other means provided by law" [citation].' [Citation.] The statutory definition ties authentication to relevance: "'[b]efore any tangible object may be admitted into evidence, the party seeking to introduce the object must make a preliminary showing that the object is in some way relevant to the issues to be decided in the action. When the object sought to be introduced is a writing, this preliminary showing of relevancy usually entails some proof that the writing is authentic—*i.e.*, that the writing was made or signed by its purported maker.""" (*Id.* at p. 1002.) "'The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered. [Citation.] Essentially, what is necessary is a prima facie case. "As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.""" (*People v. Flinner* (2020) 10 Cal.5th 686, 727.)

We conclude the trial court did not abuse its discretion in determining there was sufficient foundational evidence linking the account and messages to Mendoza. The police issued a search warrant to Facebook for records pertaining to the account under the name Mendoza Jose. Facebook produced information that pointed to Mendoza as the account holder, including information that had been input by the user upon creation of the account, such as the user's name, date of birth, email addresses, phone number, photographs, and credit card information. A phone number given to

Facebook in connection with this account matched a phone number used by Mendoza in prior calls for service to the sheriff's department. Although Mendoza's name may be common, the evidence showed both the user of the Facebook account "Mendoza Jose" and defendant Mendoza were directly linked to Lovo, and Martinez had stated in Facebook messages on the day of the robbery to Lovo that "Jose"—Mendoza's first name—was picking him up and they would meet at Valero on Highway 18. There was evidence Mendoza and Lovo knew each other, were both customers of Xhale, and had been to Xhale together. This evidence provides further foundation to demonstrate the account belonged to Mendoza, and not to some random individual who happened to have the same name.

Even assuming for the sake of argument the Facebook messages should have been excluded from the trial, the error was harmless beyond a reasonable doubt. (*People v. Flinner, supra*, 10 Cal.5th at p. 747.) There was ample evidence linking Mendoza to the robbery independent of the Facebook messages. The victim, S.D., knew Mendoza before the robbery and was able to identify Mendoza as the perpetrator who held the gun. Although Mendoza argues the identification was weak because S.D. only identified Mendoza after the police told S.D. Mendoza was a suspect, that argument goes to the weight of the identification, not its admissibility; the jury could reasonably have found S.D.'s identification credible. S.D. knew Mendoza before the robbery and had described to the police something distinctive about the gunman's eyes before the police ever told him Mendoza was a suspect. S.D. also identified the gun found in Mendoza's possession as the gun used in the robbery. Mendoza was a customer of Xhale and an acquaintance of both Lovo and Martinez. Martinez (who described Mendoza as "family") denied knowing anything about the robbery, but admitted to police he, Lovo, and Mendoza

9

had formulated a plan to rob somebody, met up at an alley behind a restaurant and talked about it, but then claimed that they had "canceled" and "dropped" the plan. Martinez also told police "I think Jose, somebody said about us meeting up at Valero." In a Facebook message to Lovo on the day of the robbery, Martinez said, "Jose is picking me up" and "we'll meet you at Valero on Highway 18." The perpetrators seemed to know S.D. could open the door to Xhale, even though S.D. never mentioned he worked there during the robbery. Mendoza matched S.D.'s physical description of the perpetrator who pointed the gun at him.

Mendoza argues the jury's acquittal of him on count 3 (assault with a firearm) shows how important the Facebook messages were to the jury and that the error was not harmless. According to Mendoza, the Facebook messages did not mention Mendoza as the gunman, but only discussed his involvement in the robbery, so that must be why the jury acquitted him on count 3. We disagree that the jury's acquittal of Mendoza on count 3 establishes the jury put great emphasis on the Facebook messages. There are other reasonable explanations for the jury's not guilty verdict on the assault charge against Mendoza. First, the jury may reasonably have concluded Mendoza did not assault S.D. during the robbery. The jury was instructed that to find Mendoza guilty of the crime of assault, the People must prove Mendoza "did an act with a semiautomatic pistol that by its nature would directly and probably result in the application of force to [the victim]." (CALCRIM No. 875.) "[A]pplication of force" is defined as touching in a "harmful or offensive manner." (CALCRIM No. 875.) At trial, S.D. testified the man with the gun ran towards him, then pointed the gun at him while S.D. remained in the driver's seat of his vehicle. S.D. said the man with the gun started "touching all around, feeling for if I had a wallet or something,"

10

but that it was someone else who broke the passenger window of the car. The entire encounter lasted about two minutes. This evidence could reasonably have led the jury to conclude that, although Mendoza was the individual with the gun, he did not assault S.D. during the robbery. The other alternative is the jury concluded the People did not prove beyond a reasonable doubt the gun used by Mendoza during the robbery was a "semiautomatic" pistol, an element of count 3. S.D. did not testify to the type of gun used against him.

## II.

### CONSTITUTIONAL CHALLENGES TO FIREARMS CONVICTIONS

Mendoza asserts that, following *New York State Rifle & Pistol Association, Inc. v. Bruen* (2022) 597 U.S. 1, California's law barring felons from possessing firearms and ammunition—i.e., section 29800, subdivision (a)(1) and section 30305, respectively—is facially unconstitutional under the Second Amendment. Other California appellate courts have recently addressed, and rejected, this very argument, concluding the Second Amendment only protects the right of law-abiding citizens to possess firearms and ammunition for the purpose of self-defense, not convicted felons like Mendoza. (See *Alexander, supra,* 91 Cal.App.5th at p. 479 ["[c]onvicted felons, by definition, are not law abiding" and "thus are not among 'the people' who have an individual right to possess firearms under the Second Amendment"]; see also *People v. Ceja* (2023) 94 Cal.App.5th 1296, 1301 ["We agree with the cogent reasoning and analysis in *Alexander* [and] hold that the felon in possession of ammunition prohibition [citation] does not facially violate the Second Amendment"]; *In re D.L.* (2023) 93 Cal.App.5th 144, 166 ["We agree with *Alexander* . . . that *Bruen* did not expand 'the categories of people who may lawfully possess a gun,' and that those convicted of a felony are squarely in a category where gun possession is off-limits due to their prior criminal

conduct"]; *People v. Odell* (2023) 92 Cal.App.5th 307, 317 [agreeing with *Alexander* that § 29800, subd. (a)(1) is constitutional].)

DISPOSITION

The judgment is affirmed.

GOODING, J.

WE CONCUR:

O'LEARY, P. J.

DELANEY, J.